IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**BILLY J. HAMILTON**,

**Plaintiff,**

**v.**

**ILLINOIS CENTRAL RAILROAD
COMPANY, d/b/a CN/IC,**

**Defendant.**                                              No. 07-0383-DRH

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I. Introduction and Procedural Background

Now before the Court are Defendant's motion to set aside entry of default and vacate default judgment under Rule 55(c) and Rule 60(b) (Doc. 21) and Plaintiff's motion to strike the affidavits of Christopher R. Karsten (Doc. 56). The motions have been fully briefed by the parties and are ripe for ruling. For the following reasons, the Court **GRANTS** the both motions.

On May 25, 2007, Billy J. Hamilton filed a two-count Complaint against Illinois Central Railroad Company d/b/a CN/IC pursuant to the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60 and the Locomotive Inspection Act, 49 U.S.C. § 20701 *et seq*. (Doc. 2.) On May 30, 2007, a Summons was issued as to Illinois Central Railroad Company ("Illinois Central") (Doc. 4) and on July 12, 2007, the Summons was returned executed indicating that Illinois Central was served on June

14, 2007. (Doc. 5.) Thereafter, Hamilton moved for entry of default (Doc. 6) which the Clerk of the Court entered on July 20, 2007. (Doc. 7.) That same day, Hamilton moved for default judgment. (Doc. 8.) On July 24, 2007, the Court entered an Order granting Hamilton's motion for default judgment and ordered a hearing on the issue of damages only. (Doc. 9.) On August 9, 2007, the Court held a hearing on the issue of damages and took the matter under advisement. (Doc. 15.) During the hearing, Hamilton asked for damages totaling $4,195,466.90.

On September 5, 2007, Illinois Central, by and through its outside counsel Kurt Reitz, entered an appearance, filed a jury demand and filed a notice of its intent to file a motion to set aside default. (Docs. 18, 19, & 20, respectively.) The next day, Illinois Central filed its motion to set aside default and vacate default judgment under Rule 55(c) and Rule 60(b). (Doc. 21.) On September 19, 2007, the Court set the matter for hearing on the motion to set aside and vacate default judgment for November 2, 2007. (Doc. 35.)

On November 2, 2007, the Court held a hearing on the issue of default and took the matter under advisement. (Doc. 57.) The Court now turns to address the merits of the motion to strike the affidavits of attorney Christopher R. Karsten[1] and the motion to set aside default and vacate default judgment under Rule 55(c) and

---

[1] The affidavits Hamilton seeks to strike are Karsten's September 6, 2007 affidavit (Doc. Doc. 27-2) and Karsten's September 17, 2007 affidavit (Doc. 31-6).

Rule 60(b). The Court first addresses the motion to strike.[2]

## II. <u>**Analysis**</u>

**A. Motion to Strike**

Hamilton argues that during the November 2, 2007 evidentiary hearing, it was established that Illinois Central's purported in-house counsel, Christopher Karsten, was not a properly registered attorney within the State of Illinois during the time he supposedly managed, controlled and supervised the handling of this lawsuit. Hamilton also argues that it was also established that Karsten was participating during the relevant times in this lawsuit in the unauthorized practice of law in Illinois. Thus, Hamilton moves the Court to exercise its inherent power and authority to sanction parties and their representatives and to strike the affidavits submitted by Karsten in this case. Illinois Central opposes the motion asserting that Karsten's status as an attorney is a collateral fact.[3] Specifically, Illinois Central argues that Hamilton "does not challenge the accuracy of the facts averred by Christopher Karsten in **any way**, but attacks only Christopher Karsten's status as a licensed Illinois attorney." (Doc. 60, p. 2.) (emphasis in original). Illinois Central also argues that there is no basis for the Court to invoke its inherent powers to

---

[2]The Court notes that Hamilton initially brought the motion to strike pursuant to the Court's inherent powers and Federal Rules of Civil Procedure 11 & 37. On November 26, 2007, Hamilton filed a pleading entitled "Plaintiff's Notice to Withdraw the Words 'And Under FRCP 11 and 37...' from paragraph 10 of His Motion to Strike the Affidavits of Christopher R. Karsten" (Doc. 67).

[3]As of November 7, 2007, Karsten is a registered attorney on the Illinois Attorney Registration and Disciplinary Commission master roll (Docs. 60-2 & 60-3.)

sanction as Hamilton has provided the Court with no evidence that Karsten acted in bad faith, vexatiously, wantonly or for oppressive reasons.

Federal courts have the inherent authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. ***Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991)(citations omitted)**. The unauthorized practice of law is sanctionable under the court's inherent authority. ***United States v. Johnson*, 327 F.3d 554, 560 (7th Cir. 2003)("considering the serious threat that the unauthorized practice of law poses both to the integrity of the legal profession and to the effective administration of justice, resort to the inherent powers … is an appropriate remedial measure.")**. Coextensive with the inherent authority to mete out sanctions is the requirement that these implied powers be exercised with restraint and discretion. ***Chambers*, 501 U.S. at 44 (citing *Roadway Express v. Piper*, 447 U.S. 752, 764 (1980))**. "Any unauthorized practice of law impacting federal court proceedings necessarily raises the specter of interference with that court's function in a manner effectively indistinguishable from fraud or deceit. The inherent power of the federal courts is thus a proper basis for the imposition of sanctions for the unauthorized practice of law." ***Johnson*, 327 F.3d at 561**. "Because the inherent powers are so broad in scope, they are to be narrowly tailored in their application." ***Id.* at 562 (citing *Chambers*, 501 U.S. at 44-45; *Diettrich v. Northwest Airlines, Inc.*, 168 F.3d 961, 964 (7th Cir. 1999))**.

During the hearing, Gary Rappaport, senior counsel for the Illinois Attorney Registration and Disciplinary Commission ("ARDC"), testified that on February 6, 2007, Karsten was removed from the master roll of attorneys eligible to practice law in Illinois. (Doc. 59; November 2, 2007 Transcript, p. 24 lines 6-8.) As to Karsten's status as an Illinois attorney and the affidavits Karsten made in this case, Rappaport testified the following:

> I think that this is problematic. Mr. Karsten had been removed from the master roll. If this was filed on September 10th, if I am understanding this correctly, or June 19th, you know, the representation that his is an attorney licensed to practice law is incorrect, and certainly appears he's holding himself out in that fashion, so this is problematic.

(Doc. 59; November 2, 2007 Transcript, p. 30 lines 6-11.) The record is clear that at the time Karsten made/signed the affidavits in this case he was engaged in the unauthorized practice of law as he was not a properly registered attorney with the ARDC when he was required to be, ***see* Ill. Sup. Ct. Rule 756(g)**.[4] Based on the case law and the circumstances of this case, the Court finds that it is appropriate to strike the affidavits submitted by Karsten. Accordingly, the Court **GRANTS** Hamilton's motion to strike and **STRIKES** Karsten's affidavits (Docs. 27-2 and 31-6). Now, the Court turns to address the merits of the motion to vacate the default

---

[4]"In Illinois, the practice of law includes, at a minimum, representation provided in court proceedings along with any services rendered incident thereto, even if rendered out of court. *In re Herrera*, 194 B.R. 178 (Bankr.N.D.Ill. 1996); *People v. Peters*, 10 Ill.2d 577, 141 N.E.2d 9 (1957). More generally, providing *any* advice or other service 'requiring the use of any legal skill or knowledge, ... the legal effect of which, under the facts and conditions involved, must be carefully determined,' amounts to practicing law. *Peters*, 141 N.E.2d at 11." ***Johnson*, 327 F.3d 561 (citations omitted)**.

judgment.

**B. Motion to Set Aside Entry of Default**

According to the record before the Court, these are the facts surrounding the default.[5] Hamilton filed suit against Illinois Central on May 25, 2007. (Doc. 2.) A Summons was issued as to Illinois Central on May 30, 2007. (Doc. 4.) On June 14, 2007 at 3:32 P.M., Marietta Sullivan, an employee of Illinois Central, sent Karsten an email. (Plaintiff's November 2, 2007 Hearing Exhibit #16.) The subject line of that email reads: "Fw: Urgent! C T received Process (Log # 512313120) in Illinois for Illinois Central Railroad Company, IL - Paperless - BILLY J. HAMILTON" and the content of the email reads: "Summons and Complaint attached here." Id. That same day, Karsten forwarded that email to Rebecca Bott, another employee of Illinois Central. Id. The content of that email reads: "Becky: Can you please draft an assignment letter to Kurt Reitz? Thanks." Id. On June 21, 2007, Karsten signed an assignment letter that purportedly contained the Summons and Complaint addressed to Illinois Central's outside counsel, Kurt Reitz of Thompson Coburn LLP in Belleville, Illinois. (Plaintiff's November 2, 2007 Hearing Exhibit #1; Doc. 56-2.) According to the letter, it was to be sent to Reitz via facsimile at 615-277-4700. Id. However, the assignment letter contained an incorrect

---

[5]The facts surrounding the default are not in dispute. What is in dispute, however, is how the Court may consider the facts as to the default. Since the Court struck Karsten's affidavits, the Court cannot weigh them in deciding the motion to vacate. The Court may consider the facts that are properly before it: i.e. exhibits submitted by the parties and admitted by the Court during the November 2, 2007 hearing and the pleadings and exhibits filed by the parties that have not been stricken.

facsimile number and Reitz never received transmission of the letter via facsimile. (Doc. 40-2: Terry Wright's Affidavit.)[6]

On July 12, 2007, the Summons was returned executed indicating that Illinois Central had been served on June 14, 2007. (Doc. 5.) On July 19, 2007, Hamilton moved for entry of default. (Doc. 6.) The Clerk of the Court entered the entry of default on July 20, 2007. (Doc. 7.) On July 20, 2007, Hamilton moved for default judgment (Doc. 8) and the Court entered an order granting the motion for default judgment and ordered a hearing on the issue of damages only. (Doc. 9.) On August 9, 2007, the Court held a damages hearing. (Doc. 15.) Throughout this time, Illinois Central never entered its appearance and its outside counsel remained unaware of the proceedings until September 5, 2007, when it was informed of this matter by an unrelated party. On September 5, 2007, counsel for Illinois Central entered its appearance and gave notice of its intent to file a motion to set aside default. (Docs. 18 & 20.) The next day, Illinois Central filed the motion to set aside the default and vacate default judgment under Rule 55(c) and Rule 60(b). (Doc. 21.)

Defendant first argues that because damages were never determined and a final judgment was never entered that the Court should conduct its analysis

---

[6]Wright's affidavit states that he is employed as a Customer Service Associate at Pitney Bowes Management Services, Inc. at the Belleville, Illinois office of Thompson Coburn LLP and has been since June 28, 2003. The affidavit also states that the facsimile number for the Belleville office of Thompson Coburn is 618-236-3434; that facsimiles sent to the Belleville office of Thompson Coburn are received at Pitney Bowes Management Services Center at the Belleville office of Thompson Coburn and that from June 14, 2007 to June 22, 2007, there is no record that Thompson Coburn received a facsimile transmission from Karsten, Bott or Illinois Central regarding this case. (Doc. 40-2; Terry Wright's Affidavit, Exhibit A.)

pursuant to the "good cause" requirement of **FEDERAL RULE OF CIVIL PROCEDURE 55(c)**. Plaintiff counters that a default judgment was entered in this case and, therefore, the heightened standard of "excusable neglect" pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 60(b)** should apply.

While the Court did, in fact, enter an Order granting Hamilton default judgment, it had not yet determined damages in this case, and therefore a final judgment had never been entered. **Rule 60(b)** does not apply until a final judgment or order has been entered. ***See Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 366 (7th Cir. 1983)**. Therefore, the Court agrees with Defendant that the "good cause" standard articulated under **Rule 55(c)** applies to this case.[7]

Rule 55(c) provides: "For good cause shown the court may set aside an entry of default, . . . ." "Damages disproportionate to the wrong afford good *cause* for judicial action, even though there is no good *excuse* for the defendant's inattention to the case." ***Sims v. EGA Products, Inc.*, 475 F.3d 865, 868 (7th Cir. 2007)**. The ***Sims*** Court stated that the "good cause" refers to "good cause" for the judicial action, not "good cause" for the defendant's error. ***Id.***

"In order to vacate an entry of default, the moving party must show: 1) good cause for default, 2) quick action to correct it, and 3) a meritorious defense to plaintiff's complaint." ***Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42,**

---

[7]However, as an aside, the Court notes that even if it applied the more stringent **Rule 60(b)** excusable neglect standard, relief also would be warranted in this matter.

45 (7th Cir. 1994); *O'Brien v. R.J. O'Brien & Assoc., Inc.*, 998 F.2d 1394, 1401 (7th Cir, 1993); *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989).

Plaintiff argues that the Seventh Circuit has become more tolerant of the use of default judgments in recent years. However, the cases Plaintiff cites in support of this proposition are quite dissimilar from the present case, in that the defendants in each of those cases exhibited wilful behavior in choosing not to defend a certain case. *See, e.g. Johnson v. Gudmudsson*, 35 F.3d 1104, 1117 (7th Cir. 1994) (finding that "default judgment was entered as a sanction for Johnson's failure to appear at a scheduled hearing and failure to participate in the preparation of a pretrial order, failures which occurred hard on the heals of earlier missed deadlines and unexplained absences" and that the district court found that counsel's conduct had "strayed from recklessness to bad faith."); *Matter of State Exchange Finance Co.*, 896 F.2d 1104, 1106 (7th Cir. 1990) (finding that default judgment were becoming a more common sanction "for late filings by defendants, especially in collection suits such as this against sophisticated obligors."); *Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224 (7th Cir. 1983) (affirming District Court's order dismissing plaintiff's case for failure to prosecute after repeated failures on plaintiff's part to secure counsel).

Although the Court agrees that "courts must have at their disposal the sanction of dismissal in order to ensure that litigants who are vigorously pursuing

their cases are not hindered by those who are not", *Id.* **at 1230,** the Court also finds that in general, in the absence of a showing of wilfulness, courts in the Seventh Circuit are more likely than not to set aside an entry of default or even to vacate a default judgment. ***See e.g. Sims,* 475 F.3d 865(finding that district court judge did not abuse his discretion in "concluding that entry of default would be overkill"); *Sun v. The Board of Trustees of the University of Illinois*, 473 F.3d 799, 811 (7th Cir. 2007)("Although a district court has the default judgment 'readily available within its arsenal of sanctions," *id.* at 1206, it is a weapon of last resort, appropriate when a party wilfully disregards pending litigation."); *Bieganek v. Taylor*, 801 F.2d 879 (7th Cir. 1986)(overturning district court's decision refusing to vacate default judgment based on a lack of evidence that defendant deliberately and wilfully disregarded the court's orders); *Bluegrass Marine, Inc. v. Galena Road Gravel, Inc.*, 211 F.R.D. 356 (S.D.Ill., 2002) (finding that although defendant made only a weak showing of good cause, he had acted quickly and had a meritorious defense)**. "In many ordinary cases resulting in default judgments, the defaulted parties were given various chances and warned; but, when they persisted in being unresponsive, they were then properly defaulted. The present case is not such a clear example of a continuing disregard for the litigation." ***Bieganek,* 802 F.2d at 882**. "When it appears, as here, that there is a genuine dispute concerning material facts, it weighs in favor of a trial to decide those factual disputes in preference to judgment by default in which facts cannot be

disputed and decided." ***Bieganek*, 802 F.2d at 882**.

Here, Illinois Central argues that it has met all three elements to set aside the entry of default. Illinois Central maintains that it can show good cause for setting aside the entry of default because it did not act in bad faith or in conscious disregard for the Court; that it acted quickly and has caused no prejudice to Hamilton and that it has a meritorious defense to Hamilton's allegations. In response, Hamilton argues that Illinois Central's conduct in handling the litigation has been reckless, cavalier and inept and that this conduct militates against this Court granting it any relief. Specifically, Hamilton contends that because Illinois Central is a commercial enterprise that engages in large-scale business transactions it should be held to a higher standard of diligence. Hamilton further argues that Illinois Central has not demonstrated what if anything it did after June 21, 2007 to ensure that the lawsuit was being properly handled. The Court agrees with Illinois Central.

The Court finds that under the case law, Illinois Central has met the good cause prong. Illinois Central's failure to respond was the result of inadvertence, misunderstanding and mis-communication. The assignment letter, Summons and Complaint were mistakenly faxed to a wrong working facsimile number. Its counsel, Thompson Coburn did not receive the facsimile, did not know of the pending litigation and thus did not enter its appearance until September 5, 2007. Illinois Central has not denied receiving service, has not attempted to avoid the legal system and has shown no willful disregard. There is no evidence of that Illinois Central's

default was willful or the result of gross negligence.[8]

Further, Illinois Central has acted quickly and caused no prejudice to Plaintiff in this matter. Illinois Central's outside counsel acted immediately upon learning of the default. Default was entered on July 24, 2007 and Illinois Central filed its motion on September 6, 2007 (a little over six weeks after default was entered). When there has been good cause for the delay and there has been no prejudice to the other party, the Seventh Circuit has upheld a ten-week delay as sufficiently quick to warrant vacating a default judgment. **Smith v. Widman Trucking & Excavating, Inc.**, **627 F.2d 792 (7th Cir. 1980)**. Furthermore, the Court finds that Hamilton will not be greatly prejudiced by Illinois Central's late entry. This case is still at the early stages of litigation. Hamilton's complaint requests a jury trial. While there has been a minimal delay in the litigation, the Court finds that the slight injury suffered by Hamilton because of the delay does not call for a multi-million-dollar award that Hamilton is seeking. In addition, Illinois Central has offered to pay Hamilton reasonable fees he has incurred as a result of the default.

---

[8] The Court finds that this case is very similar to **Passarella v. Hilton Internantional Co., 810 F.2d 674, 676 (7th Cir. 1987)**, in which the Seventh Circuit reversed and vacated default judgment where "Hilton International mistakenly assumed that Continental Insurance Company had received its two letters containing Passarella's complaint and information about the suit and that Continental had answered the complaint." The Seventh Circuit held: "While it is clear that Hilton International should have been more careful in monitoring the progress of the complaint, ... we do not agree with the district court's entry of default judgment against Hilton International. ... Thus, in a case where the defendant has a reasonable explanation for its conduct that excludes any possibility of willfullness, and the defendant has an obviously meritorious defense to the plaintiff's claim, the interest of justice-of allowing a trial on the merits to proceed to a judgment that is fair and based on a full presentation of the evidence-demand that the default judgment be vacated and the case allowed to proceed to trial." **Id. at 678**.

The Court also finds that Illinois Central has a meritorious defense based upon the record before the Court. Illinois Central has set forth two plausible meritorious defenses: statute of limitations and causation defenses to Hamilton's claims. **See Jones v. Phipps, 39 F.3d 158, 165 (7th Cir. 1994) (A "meritorious defense" is not necessarily a winning one but is one which is "supported by a developed legal and factual basis.")**.

As stated above, the Court finds that default is not warranted under these circumstances and grants the motion to vacate. However, the Court **ORDERS** Illinois Central to bear the costs and time expended for the additional litigation.

### III. Conclusion

Accordingly, the Court **GRANTS** Defendant's motion to set aside entry of default and vacate default judgment under Rule 55(c) and Rule 60(b) (Doc. 21); and Plaintiff's motion to strike the affidavits of Christopher R. Karsten (Doc. 56). The Court **VACATES** both the default entry and the default judgments (Docs. 7 & 9, respectively). The Court **ORDERS** Defendant to file its answer to Plaintiff's complaint *instanter*. Further, the Court **DENIES** Plaintiff's motion to strike portions of Defendant's motion to set aside entry of default and/or to vacate default judgment (Doc. 36); Plaintiff's motion to strike portions of Defendant, Illinois Central Railroad Company's, supplement to Defendant's motion to set aside entry of default and vacate judgment under Rule 55(c) and Rule 60(b) (Doc. 44) and Defendant's motion to stay enforcement pending the disposition of its motion for relief from judgment

(Doc. 22).

Lastly, the Court **ORDERS** Defendant to pay Plaintiff reasonable attorney's fees related to the default in this case. Plaintiff has up to and including to January 22, 2008 submit its costs and fees to Defendant. Thereafter, Defendant has up to and including to February 22, 2008 to pay the fees. Should a dispute arise out of the costs and fees, Defendant has up to and including February 5, 2008 to file objections. Further, the Court **REFERS** the matter of the costs and fees to Magistrate Judge Wilkerson to resolve, if needed.

**IT IS SO ORDERED.**

Signed this 7th day of January, 2008.

/s/       *DavidRHerndon*
**Chief Judge**
**United States District Court**